# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| 1. DEVON ENERGY PRODUCTION COMPANY, L.P., an Oklahoma limited partnership, and<br>2. ENERGY CORPORATION, an Oklahoma corporation,<br><br>        Plaintiffs,<br><br>v.<br><br>3. UNITED STATES DEPARTMENT OF THE INTERIOR,<br><br>        Defendant. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)     Civil Case No. CIV-20-53-D _____ |

## COMPLAINT FOR JUDICIAL REVIEW

Devon Energy Production Company, L.P., an Oklahoma limited partnership, and Devon Energy Corporation, an Oklahoma corporation (collectively, "**Devon**"), seek reversal of a final action of the United States Department of the Interior ("**Interior**"). The action is an "Order to Perform Restructured Accounting and Pay Additional Royalties" (the "**Order**"), dated April 15, 2016, and issued under the Federal Oil and Gas Royalty Simplification and Fairness Act, 30 U.S.C. § 1724(d)(4) ("**Royalty Fairness Act**").

1.      The Order imposes two obligations on Devon with respect to certain identified oil and gas unitization agreements in New Mexico.  One, for certain audit test months, disallows all transportation and natural gas processing allowances Devon had

claimed in its federal royalty reporting and to pay $2,841,264.  The other requires Devon also to perform a "restructured accounting" for all months.  That accounting is to cover the five-year period of January 1, 2004 through December 31, 2008 (the "**Relevant Time Period**").

2.      By statute, Interior may issue a restructured accounting order to a lessee only if the lessee has made

> identified underpayments or overpayments which <u>are demonstrated by the Secretary</u> [of the Interior] or the delegated State to be <u>based upon repeated, systemic reporting errors for a significant number of leases</u> or a single lease for a significant number of reporting months with <u>the same type of error</u> which constitutes a pattern of violations and which are likely to result in either significant underpayments or overpayments.

30 U.S.C. § 1724(d)(4)(B)(i) (emphasis added).  Additionally, Interior "shall . . . specify the reasons and factual bases for such [an] order."  30 U.S.C. § 1724(d)(4)(B)(ii)(II).

3.      The Order violates these requirements.  First, Interior failed to demonstrate any error in Devon's payments.  Interior claimed that Devon was not allowed to take any deductions for transportation or processing until Devon first demonstrated it had separated from its deductions costs needed to make Devon's production "marketable."  Interior, in other words, unlawfully flipped the statutory burden of proof on to Devon.  Second, Interior ignored ample documentation in the record showing that the gas was already in marketable condition and failed to explain how its Order was warranted in the face of all the contrary evidence.  Third, Interior completely disregarded that Devon's deductions for over sixty percent of the production were consistent with the terms of a 1998 settlement agreement.  In sum, Interior failed to show its Order was based upon

"repeated systemic reporting errors for a significant number of leases," as required by law.  The record shows no systemic error at all.

4.      Furthermore, the Order and the Order's two "alternatives" to compliance violate the Due Process Clause of the Fifth Amendment of the United States Constitution. Interior has denied Devon the data it needs to defend against Interior's claim and would require Devon to give up its right to take deductions to which federal regulations entitle it.  *Amoco Prod. Co. v. Fry,* 118 F.3d 812, 819 (D.C. Cir. 1997) (holding Interior had violated Due Process by refusing to provide oil and gas lessees information needed to challenge Interior's royalty demands).

## JURISDICTION AND VENUE

5.      Devon seeks to have the Order declared unlawful, reversed, and set aside under section 10 of the Administrative Procedure Act ("APA"), 5 U.S.C. § 706.  Devon has suffered legal wrong from, and is adversely affected or aggrieved by, the Order within the meaning of 5 U.S.C. § 702.  By separate order dated September 27, 2019, Interior declared that the Order had become final agency action.  The United States has waived its sovereign immunity.  5 U.S.C. § 704.

6.      This action arises under the Royalty Fairness Act and regulations implementing the Mineral Leasing Act of 1920 ("MLA"), 30 U.S.C. § 181 *et seq.*, and the Federal Oil and Gas Royalty Management Act of 1982, as amended by the Royalty Fairness Act, 30 U.S.C. § 1701 *et seq.*, the APA, 5 U.S.C. § 500 *et seq.*, and the Due Process Clause of the Fifth Amendment to the United States Constitution.

7.     Devon has timely commenced this action under 30 U.S.C. § 1724(j).  The Court has jurisdiction under 28 U.S.C. § 1331 (federal question jurisdiction).

8.     Venue is proper for Devon's royalties claims (1) under 28 U.S.C. § 1391(e)(1)(A) because defendant resides in this District, (2) under 28 U.S.C. § 1391(e)(1)(B) because a substantial portion of the events giving rise to the claim occurred in this District, and (3) under 28 U.S.C. §§ 1391(c)(2) and 1391(e)(1)(C) because plaintiff resides in this District and no real property is involved in this action.

## THE PARTIES

9.     Plaintiff Devon Production Company, L.P. is an Oklahoma limited partnership with its principal place of business in Oklahoma City, Oklahoma.  Plaintiff Devon Energy Corporation is an Oklahoma corporation with its principal place of business in Oklahoma City, Oklahoma.

10.     Devon at all relevant times in the past was a lessee under the Interior-administered leases in three Interior-approved unit agreements for lands in northwest New Mexico.  Interior has designated the three unit agreements: (a) 8920009290 Mesa Verde, Northeast Blanco Unit, (b) 892000929B Fruitland Coal, Northeast Blanco Unit, and (c) 891000569C San Juan 32-9 (the "**Agreements**").

11.     Defendant Interior is a federal executive department of the United States government.  Relevant to this case are two component agencies within Interior.  One is the Office of Natural Resources Revenue ("**ONRR**"), the federal agency charged with assessing and collecting royalties for natural gas produced on federal lands. The other is

the Interior Board of Land Appeals ("**IBLA**"), a board of career civil servants with the authority to act for the Secretary of the Interior on administrative appeals from orders and decisions issued by ONRR.

## GENERAL ROYALTY ALLEGATIONS

12.     Devon produced and sold natural gas (*i.e.*, coalbed methane gas and conventional gas) and natural gas liquids from various formations pursuant to the Agreements.

13.     This action concerns federal royalty payments made and allowances claimed by Devon for production under the Agreements.  It proceeds from an audit conducted by State of New Mexico Taxation & Revenue Department (the "**State**"), acting under a delegation of authority from Interior under 30 U.S.C. § 1735.  The audit was of Devon's production and sales for the time period January 2004 through December 2008. The audit was a successor to an audit of the period 1995 to 1999, which found no issues with Devon's royalty payments.  The audit at issue here is also for a period governed by the 1998 settlement agreement covering the majority of production at issue.

### Settlement Agreement

14.     On March 30, 1998, Devon entered into a Settlement Agreement and Mutual Release with *inter alia* the Interior (the "**Settlement Agreement**") (Administrative Record[1] ("**AR**") at 8445-8453), establishing a "proper methodology" for calculating the deductible/nondeductible portions of the "bundled" rate charged by

---

[1]  Citations to the administrative record are to the record presented by ONRR to the IBLA.

Enterprise for Devon's coalbed methane gas production from the San Juan Basin since April 1997.

15.     The Settlement Agreement establishes $0.0778 per Mcf of Devon's coalbed methane gas is <u>not</u> deductible for carbon dioxide treatment (*see id.* at 8451-8452), establishes the costs of dehydration and compression existing in the Val Verde System and Plant <u>are</u> deductible transportation charges (*see id.* at 8445-8447, 8451-8452), and provides formulas for calculating deductible transportation and fuel costs (*see id.*).

16.     On November 4, 2005, Devon informed Interior, through ONRR's predecessor, the Minerals Management Service (the "**MMS**"), that Devon would continue to report and pay royalties on its coalbed methane gas production in accordance with the terms of the Settlement Agreement.  (*Id.* at 93.)  On February 23, 2006, the MMS responded without stating that the Settlement Agreement was in any way no longer in force.  (*Id.* at 93.)

## Prior Audits and the State Audit at Issue

17.     In 2002, the State of New Mexico MMS Audit Division conducted an audit of Devon's federal royalty payments and allowances for production under the Agreements from January 1995 through December 1999 and found no issues with allowances claimed.  (*See* AR at 8373.)

18.     From August 2009 through April 2016, the State conducted an audit of Devon's federal royalty payments and allowances for production under the Agreements from January 2004 through December 2008.  (*See*, *e.g.*, *id.* at 1-110 (Order), 119-124

(Audit Scope Letter and First Data Request), 138-142 (Audit Scope Letter and First Data Request), 143-150 (Engagement Letter of Company Audit).)

*Agreement No. 8920009290 (Mesa Verde Formation) Sub-Audit*

19.     On November 23, 2011, the State issued an Issue Letter (*id.* at 278-302), in which, following receipt of carbon dioxide ("**CO$_2$**") data from Devon, (*see id.* at 284, 297; *see also id.* at 917), the State permitted Devon's transportation and processing allowances (*see id.* at 283-286, 290-291, 295, 297-301).

20.     On February 12, 2013, the State issued a Revised Issue Letter (*id.* at 239-264), in which the State continued to permit allowances (*see id.* at 240), but stated its intent to disallow some part of the allowances Devon had taken, based on information the State had received from Devon's counterparties under gathering and processing contracts. These counterparties were Enterprise Field Services ("**Enterprise**") and Williams Field Services ("**Williams**").  (*Id.* at 241).

21.     On May 15, 2013, the State issued a Revised Issue Letter (*id.* at 206-229) similar to the February 12, 2013, letter, in which the State continued to permit allowances (*see id.* at 207), again stating its intent to rely on third-party data to disallow part of Devon's allowances.

22.     On March 5, 2015, the State issued an Audit Issue Letter (*id.* at 152-156).

23.     On May 29, 2015, Devon responded, stating Devon had requested from Enterprise and Williams "a breakdown of the costs each incurs for each service each entity provides in exchange for the bundled rate that Devon pays," but because Enterprise

and Williams declined to provide this information, Devon was unable to separate each rate into deductible and non-deductible transportation charges (*id.* at 92), as the State proposed to require.

24.    In that same letter Devon also reminded the State that Devon had "entered into a Settlement Agreement with the United States Department of the Interior (the 'USDOI'), among others, that since 1998 has established a methodology for calculating the deductible and non-deductible portions of the bundled rate being charged by Enterprise," and therefore, with two exceptions (which Devon has since corrected), Devon had been calculating its deductible treatment and transportation charges in accordance with the Settlement Agreement (*id.* at 93, 98-106).

25.    Finally, in that same letter, Devon reminded the State of Devon's notice to it in April 2012 that it "did not have sufficient information to validate ONRR's system to plant allocations or its allowed vs. disallowed percentages, and thereby requested more information from [the State] to support these calculations;" but Devon had still not received any information in response (*id.* at 93-96).

26.    Interior has never provided the information Devon requested.

*Agreement No. 891000569C (Fruitland Coal Formation) Sub-Audit*

27.    On September 30, 2013, the State found that "[g]as from SJ 32-9 is combined with gas from other properties and formations and sold in a pooled sale."  (AR at 1099.)

28.     On October 31, 2013, the State issued an Issue Letter (*id.* at 199-204), permitting allowances (*see id.* at 202) and noting that "[n]o $CO_2$ is reported for gas flowing through the Enterprise Chaco plant because it is combined with gas from other formations with low $CO_2$ content" (*id.*).

29.     On December 17, 2013 and March 10, 2014, the State issued Revised Issue Letters (*id.* at 178-183, 192-197), permitting allowances (*see id.* at 181, 195, 196) and again noting that "[n]o $CO_2$ is reported for gas flowing through the Enterprise Chaco plant because it is combined with gas from other formations with low $CO_2$ content" (*id.* at 180, 195).

30.     On March 24, 2014, the State issued a Revised Issue Letter (*id.* at 171-176), again permitting allowances (*see id.* at 174) and again noting that "[n]o $CO_2$ is reported for gas flowing through the Enterprise Chaco plant because it is combined with gas from other formations with low $CO_2$ content" (*id.* at 173).

## The Order

31.     On April 15, 2016, the ONRR issued the Order (AR at 1-110), having determined "all transportation and processing allowances are disallowed" (*see id.* at 1). The Order asserted:

a.      Devon is a party to contracts with Enterprise and Williams.  Under those contracts, Enterprise and Williams provide gas gathering, dehydration, treating, and processing services for a single (bundled) fee stated as an amount per MCF.  The services provided include functions required to place gas in marketable condition, which are not

allowable deductions when computing Federal royalties due.  The fees attributable to the disallowed functions must be separated (unbundled) and excluded from the transportation and processing cost to correctly calculate allowed deductions from Federal royalties to be paid.  (AR at 3.)

      b.     Devon and the State agree on the amount of additional royalties due prior to deducting any transportation and/or processing allowances.  Throughout the audit process, Devon has stated that it will appeal any order to pay additional royalties that result from unbundling transportation and/or processing costs.  (*Id.*)

      c.     ONRR notified Devon of ONRR's (the State's) preliminary determination that additional royalties were due by Issues Letters, as revised.  Devon responded that it disagreed with the State's calculations of transportation and processing allowances and would appeal additional royalties resulting from those calculations.  ONRR has not changed its determination.  (*Id.* at 3-4.)

    32.    The Order identified only one issue: "Transportation and Processing Allowances include costs of placing gas into marketable condition that are not deductible."  The Order added, "Devon computed transportation and processing allowances based upon expenses that include the cost of placing the gas into marketable condition.  You gave notice that you will not pay additional royalties that are due as a result of unbundling transportation and/or processing costs prior to the conclusion of an appeal on this issue."  (*Id.* at 4.)

33.     To correct the alleged violation, the ONRR provided Devon with three options:

a.      Devon "must unbundle the transportation system and processing plant costs to separate allowable transportation and processing costs from non-allowable costs of placing gas in marketable condition [and] then may deduct the allowable transportation and processing costs, but not the non-allowable costs of placing gas in marketable condition . . . , subject to our review and audit" (*id.* at 9);

b.      Devon "may use the Unbundling Cost Allocations (UCA) that we publish to calculate your allowable transportation and processing costs," subject to a later audit (duplicative of the one already at issue here) and the ONRR "may require you to report and pay based on your actual and reasonable costs, even if you used the published UCA" (*id.* at 9-10); or

c.      Devon "may take no transportation and processing allowance" (*id.* at 10).

## COUNT I

## Violation of The Administrative Procedure Act

34.     Devon repeats and re-alleges the allegations in the preceding paragraphs as if fully set forth herein.

35.     Interior issued the Order without observance of procedure required by law. 5 U.S.C. § 706(2)(D).  Under the Royalty Fairness Act, Interior was required to observe specified procedures when issuing an order to perform restructured accounting.  In such

an order, Interior must show identified underpayments.  30 U.S.C. § 1724(d)(4)(B)(i) ("underpayments . . . which are *demonstrated by the Secretary*" (emphasis added)). Interior must show "repeated, systemic reporting errors for a significant number of leases[.]"  *Id.*  Interior must show that the identified error "constitutes a pattern of violations[.]"  *Id.*  Interior must show the violations "are likely to result in . . . significant underpayments[.]"  *Id.*  And Interior "shall . . . specify the reasons and factual bases for such [an] order.  *Id.* § 1724(d)(4)(B)(ii)(II).

36.    The only "reason" offered in the Order is that Devon has contracts with Enterprise and Williams that provide for services which can include "gas gathering, dehydration, treating, and processing services for a single (bundled) fee[.]"  (AR at 3.) The Order asserts the "services provided include functions required to place gas in marketable condition, which are not allowable deductions when computing Federal royalties due."  (*Id.*)

37.    Interior's Order falls short of the statute in at least the following ways.

38.    In purporting to find a "systemic" error, the Order fails to recognize that sixty-one percent of the gas in issue was valued under the terms of the Settlement Agreement, which specifically resolved the issue of "marketable condition." Those payments were "systemically" correct under that settlement.

39.    By disregarding that payments under the Settlement Agreement were already less than the full amounts charged by Enterprise and by Williams, the Order errs

in finding that Devon deducted "a single (bundled) fee" (*id.* at 3) charged by each of those companies.

40.     Under Interior's regulations and precedents, Interior has repeatedly acknowledged that companies can gather, dehydrate, and treat gas for reasons independent of putting the gas into marketable condition.  The Order itself acknowledges this by observing that Devon could not deduct a full unbundled fee "*if* that fee includes non-allowable costs to place gas into marketable condition."  (*Id.* at 9 (emphasis added).) The Order was required to supply the reasons and factual bases for determining that part of Devon's deductions were for costs needed to make the gas marketable.  Despite seven years spent on the audit in question, Interior supplied none.

## COUNT II

### Violation of The Administrative Procedure Act

41.     Devon repeats and re-alleges the allegations in the preceding paragraphs as if fully set forth herein.

42.     Interior issued the Order asserting authority "in excess of statutory jurisdiction, authority, or limitations[.]"  5 U.S.C. § 706(2)C.  The Order asserts that at the time Devon "pay[s] a bundled rate" for transportation and processing costs, "you must unbundle the transportation system and processing plant costs to separate" allowable from unallowable costs.  (AR at 9.)  It further asserts that the "unbundled transportation and processing fee that you claim may be subject to our review and audit[,]" and that without that unbundling a lessee's choice is take no transportation or

processing allowance at all.  (*Id.* at 10.)  Interior's regulations do not require Devon to pre-submit proof or obtain the agency's pre-approval for transportation allowances or processing allowances.  30 C.F.R. §§ 1206.157(a)(1)(i) (2016) ("ONRR's prior approval is not required before a lessee may deduct costs incurred under an arm's-length contract."), & 1206.159(a)(1)(i) (2016) ("ONRR's prior approval is not required before a lessee may deduct costs incurred under an arm's-length contract.").   Rather than following required procedure and determining what costs should be allowed at the end of a seven-year audit, Interior exceeds its authority, demands that Devon start over and pre-submit proof, subject to yet another audit of the same time period.  ONRR's similar approach in a different case was reversed in *Devon Energy Production Co., L.P. v. Gould* ___ F.Supp. 3d ___, 2019 WL 6257793 (D. Wyo. 2019).

## COUNT III

### Violation of The Administrative Procedure Act

43.     Devon repeats and re-alleges the allegations of the preceding paragraphs as if fully set forth herein.

44.     The Order is arbitrary and capricious.  5 U.S.C. § 706(2)(A).  The Order fails to articulate a rational connection between the facts in the record, including facts contradicting the agency's action, and the decision made.  *Via Christi v. Leavitt*, 509 F.3d 1259, 1271 (10th Cir. 2007) (court must set aside agency action unless it is supported by substantial evidence in the administrative record); *Hall v. U.S. Dep't of Labor*, 476 F.3d 847, 854 (10th Cir. 2007) (agency must address evidence that detracts from agency's

decision). The record shows that carbon dioxide, the principal gas that might require removal to make the rest of the gas marketable, was already below the level required in the marketplace. (*See, e.g.*, AR at 180, 195, 202, 3309, 3760, 3764-3765, 4167, 4970-4973, 5923, 6316-6324, 6329, 6506-6511, 6896-6899, 7238-7242, 7859-7860, 7864-7865, and 8289-8295.) The Order does not explain the basis for its finding that Devon took inappropriate deductions.

## COUNT IV

### Violation of The Administrative Procedure Act

45. Devon repeats and re-alleges the allegations of the preceding paragraphs as if fully set forth herein.

46. The Order is arbitrary and capricious. 5 U.S.C. § 706(2)(A). Without explanation, the Order departs from longstanding precedent requiring Interior, after an audit, to prepare a factual basis to support its decision. This is a duty the IBLA places on ONRR to facilitate review on administrative appeal. "At the very least, an agency decision, made in the exercise of its discretionary authority, must be supported by a proper administrative record, including a reasoned analysis of the facts leading to the decision. . . ." *Graham Pass, LLC*, 182 IBLA 79, 92 (2012). The facts are as essential as the reasoning. "[T]he appellant is entitled to a reasoned and factual explanation for [the decision]. Appellant must be given some basis for understanding and accepting the [decision] or alternatively appealing and disputing it before this Board." *Id.* (quoting *S. Union Expl. Co.*, 51 IBLA 89, 92 (1980)).

47.     Interior has departed from these precedents.  It arbitrarily relies instead on case law that holds that, after Interior has met its initial burden of reasoning and factfinding, the burden then shifts to the lessee to refute that showing.  (AR at 9.)  Interior irrationally asserts that the lessee's burden to refute Interior's initial showing makes it the lessee's burden initially.

## COUNT V

### Due Process Violation and Violation of The Administrative Procedure Act

48.     Devon repeats and re-alleges the allegations of preceding paragraphs as if fully set forth herein.

49.     Under the Due Process Clause of the Fifth Amendment to the United States Constitution, Interior must provide lessees with "the audit calculations supporting the underpayment determinations along with the facts or records upon which those calculations rest."  *Amoco Prod. Co. v. Fry*, 118 F.3d 812, 819 (D.C. Cir. 1997).  Lessees are "entitled to such information for, without it, they cannot effectively question whether the Government is" demanding more than what it is entitled to.  *Id.*

50.     Interior has violated Devon's rights under the Due Process Clause by withholding data needed to "unbundle" Devon's deductions of transportation and processing allowances."  Devon cannot obtain the information from any other source and, without it, Interior will unlawfully compel Devon to lose its deductions altogether. Interior is trying to enforce a system under which it will deprive Devon of its right to

- 16 -

deductions, *see* 30 C.F.R. § 206.156(a) (2008), by imposing impossible conditions on its exercise.

## PRAYER FOR RELIEF

WHEREFORE, Devon prays that the Court:

(a)     Hold unlawful, reverse, and set aside the Order as arbitrary and capricious, an abuse of discretion, the result of failing to follow procedure required by law, in excess of statutory and regulatory authority, contrary to constitutional right, and otherwise not in accordance with the law;

(b)     Enter a declaratory judgment that the Order is arbitrary and capricious, an abuse of discretion, and/or otherwise not in accordance with the law;

(c)     Remand this matter to Interior to address the errors addressed in this Complaint as necessary;

(d)     Award Devon its costs and attorneys' fees to the extent permitted by law;

(e)     Grant such other relief as may be appropriate in the circumstances; and

(f)     Retain jurisdiction over this action for such additional or supplemental relief as may be required.

- 17 -

Respectfully submitted this 15th day of January, 2020.

BAKER & HOSTETLER LLP

*/s/ L. Poe Leggette*
L. Poe Leggette
Rosario Doriott Domínguez
pleggette@bakerlaw.com
rdoriottdominguez@bakerlaw.com
1801 California Street, Suite 4400
Denver, Colorado 80202-2662
Telephone: 303.861.0600
Facsimile: 303.861.7805

*/s/ Mark. B. McDaniel*
Mark B. McDaniel, OBA No. 14275
mark.mcdaniel@dvn.com
333 West Sheridan Avenue
Oklahoma City, Oklahoma 73102
Telephone: 405.552.7819
Facsimile: 405.552.4648

*Attorneys for Plaintiff Devon Energy*
*Production Company, L.P. and Devon*
*Energy Corporation*

4821-1481-8737.1