# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF OKLAHOMA

DEVON ENERGY PRODUCTION )
COMPANY, L.P., *et al.*, )
         )
        Plaintiffs, )
         )
v. )     Case No. CIV-20-053-D
         )
UNITED STATES DEPARTMENT )
OF THE INTERIOR, )
         )
        Defendant. )

## <u>MEMORANDUM OF DECISION</u>

This matter comes before the Court for the disposition of Plaintiffs' action to review a final decision of the Department of the Interior under the Administrative Procedures Act ("APA"), 5 U.S.C. § 706. For reasons that follow, the Court finds that Plaintiffs have not shown reversible error and that the Department's decision should be affirmed.

### Factual and Procedural Background

Plaintiffs seek judicial review of a final determination by the Department regarding royalties due on gas production from federal lands in New Mexico. Specifically, Plaintiffs challenge the Order to Perform Restructured Accounting and Pay Additional Royalties (the "Order") issued April 15, 2016, by the Department's Office of Natural Resources Revenue ("ONRR") under the Federal Oil and Gas Lease Royalty Simplification and Fairness Act of 1996, 30 U.S.C. § 1724, and applicable regulations.[1] The Order includes an explanation,

---

[1] The regulations implement the Mineral Leasing Act of 1920, 30 U.S.C. § 181 *et seq.*, and the Federal Oil and Gas Management Royalty Act of 1982, 30 U.S.C. § 1701 *et seq.* Like the parties, the Court cites the regulations in effect at the time of the Order.

schedules, and other attachments, and appears in the administrative record ("AR") at pages AR_0161 through AR_0270. The Order obliges Plaintiffs 1) to pay $2,841,264.58 owed following the disallowance of transportation and processing costs calculated in Plaintiffs' royalty reporting records, and 2) to perform a restructured accounting for a five-year sales period from January 1, 2004, through December 31, 2008, and pay any additional royalties. The Order became a final agency action under a separate order issued September 27, 2019, by the Interior Board of Land Appeals.[2] Plaintiffs timely initiated this action. *See* 30 U.S.C. § 1724(j).

The Complaint for Judicial Review [Doc. No. 1] states the following claims: the Order violates the statutory requirements of 30 U.S.C. § 1724(d)(4)(B)(i) for issuance of a restructured accounting order where the Department demonstrates "repeated, systemic reporting errors" for a significant number of leases or reports (¶¶ 2-3, 35-40); the Order exceeds the Department's authority and is arbitrary and capricious (¶¶ 42, 44, 46); and the Department violated the Due Process Clause by denying Plaintiffs access to the information they needed to take authorized deductions and to challenge the finding of underpayments (¶¶ 4, 49-50). Under an agreed schedule, the Department has submitted the voluminous administrative record, and Plaintiff Devon Energy Production Company, L.P. has provided a supplement. *See* Order Granting Unopposed Mot. Suppl. Admin. R.

---

[2] Plaintiffs' administrative appeal was dismissed based on a statutory time limit for agency review. *See* 30 U.S.C. § 1724(h)(2)(B). In this situation, the Department's "deemed final decision adopts [ONRR's] decision on the issues raised." *See BP Am. Prod. Co. v. Haaland*, 87 F.4th 1226, 1238 & n.11 (10th Cir. 2023) (citing *OXY USA Inc. v. U.S. Dep't of Interior*, 32 F.4th 1032, 1043 (10th Cir. 2022)).

[Doc. No. 28].  The parties have fully briefed the issues presented.  *See* Pls.' Am. Opening Br. [Doc. No. 32]; Def.'s Resp. Br. [Doc. No. 33]; Pls.' Reply Br. [Doc. No. 34].[3]  Upon consideration of the record, the parties' arguments, and the governing law, the Court issues its ruling.

## Standard of Review

"Under the APA, [a court] cannot set aside an agency decision unless it fails to meet statutory, procedural or constitutional requirements, or unless it is arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law."  *Sac & Fox Nation v. Norton*, 240 F.3d 1250, 1260 (10th Cir. 2001); *see* 5 U.S.C. § 706(2)(A)-(D).

> The scope of review under the "arbitrary and capricious" standard [of § 706(2)(A)] is narrow and a court is not to substitute its judgment for that of the agency.  Nevertheless, the agency must examine the relevant data and articulate a satisfactory explanation for its action including a rational connection between the facts found and the choice made.  In reviewing that explanation, we must consider whether the decision was based on a consideration of the relevant factors and whether there has been a clear error of judgment.

*Motor Vehicle Mfrs. Ass'n of U.S., Inc. v. State Farm Mut. Auto. Ins. Co*., 463 U.S. 29, 43 (1983) (internal quotations and citations omitted).  As summarized by the Tenth Circuit:

> An agency's decision is arbitrary and capricious if the agency (1) entirely failed to consider an important aspect of the problem, (2) offered an explanation for its decision that runs counter to the evidence before the agency, or is so implausible that it could not be ascribed to a difference in view or the product of agency expertise, (3) failed to base its decision on consideration of the relevant factors, or (4) made a clear error of judgment.

---

[3]  Plaintiffs' reply brief does not comply with the requirement of LCvR7.1(e) that a brief longer than 15 pages must have an indexed table of contents and an indexed table of authorities.  However, the Court elects to exercise its discretion to excuse Plaintiffs' noncompliance.

*OXY USA, Inc. v. U.S. Dep't of Interior*, 32 F.4th 1032, 1043-44 (10th Cir. 2022) (internal quotations omitted).   The arbitrary and capricious standard also requires an agency's decision to be "supported by 'substantial evidence' in the administrative record." *Pennaco Energy, Inc. v. U.S. Dep't of Interior*, 377 F.3d 1147, 1156 (10th Cir. 2004).   "Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id*. (quoting *Doyal v. Barnhart*, 331 F.3d 758, 760 (10th Cir. 2003)).

"When courts consider [APA] challenges, an agency's decision is entitled to a presumption of regularity, and the challenger bears the burden of persuasion." *Biodiversity Conservation All. v. Jiron*, 762 F.3d 1036, 1060 (10th Cir. 2014) (internal quotation omitted); *see N.M. Health Connections v. U.S. Dep't of Health & Hum. Servs*., 946 F.3d 1138, 1162 (10th Cir. 2019).   "Where challenged agency decisions 'involve technical or scientific matters within the agency's area of expertise,' [judicial] deference to the agency is 'especially strong'." *Wild Watershed v. Hurlocker*, 961 F.3d 1119, 1132 (10th Cir. 2020) (quoting *Biodiversity*, 762 F.3d 1036 at 1060); *accord Dine Citizens Against Ruining Our Env't v. Haaland*, 59 F.4th 1016, 1029-30 (10th Cir. 2023).

### Facts Shown by the Record [4]

Plaintiffs hold lease rights to extract and sell natural gas from federal lands and, in exchange, must pay royalties to the federal government on the value of the gas produced and sold.   As lessees, Plaintiffs are statutorily required to report and pay the royalties due.[5]

---

[4]  Many relevant facts are stated in the Complaint and admitted.  *See* Answer [Doc. No. 12].

[5]  *See* 30 U.S.C. §§ 1712(a), 1713(a).

This dispute arises from ONRR's disallowance of deductions that Plaintiff reported over a five-year period, which reduced their royalty payments.  In the Order, ONRR found that Plaintiffs calculated deductions for transportation and processing costs using a "bundled" rate paid to third-party providers for multiple services, without segregating allowable costs from costs that cannot be deducted under federal law.  *See* AR_0163.  The crux of the dispute is Plaintiffs' position that they were not legally required, or should not be required, to separate or "unbundle" the fees for royalty reporting.  *Id.*  Plaintiffs base their position on federal regulations, a 1998 settlement agreement that resolved a prior underpayment dispute, and due process arguments.

The genesis of the Order was an audit conducted by the State of New Mexico Taxation and Revenue Department (the "State") under its federally delegated authority.[6] The State audited royalties due on Plaintiffs' gas production from January 1, 2004, through December 31, 2008, under leases committed to three unitization agreements: No. 8920009290 (Mesa Verde); No. 892000929B (Fruitland Coal); and No. 891000569C (San Juan).  The Mesa Verde agreement concerned conventional gas, and the other two agreements concerned coalbed methane gas.

The Order followed a series of audit letters issued by the State, to which Plaintiffs responded.  Ultimately, the State and Plaintiffs agreed on the amount of royalties due prior to deducting transportation and processing allowances.  AR_0163.  The sole disputed issue, involving bundled fees, is described in the Order as follows:

---

[6] *See* 30 U.S.C. § 1735.

Devon is a party to agreements with Enterprise Field Services (EFS) and Williams Field Services (WFS). In the agreement, EFS and WFS provide gas gathering, dehydration, treating, and processing services for a single (bundled) fee stated as an amount per MCF. The services provided include functions required to place gas in marketable condition, which are not allowable deductions when computing Federal royalties due. The fees attributable to disallowed functions must be separated (unbundled) and excluded from the transportation and processing cost to correctly calculate allowed deductions from Federal royalties to be paid.

AR_0163. After identifying the applicable regulations that allegedly support a requirement to unbundle a third-party rate claimed as transportation and processing allowances, ONRR stated its position as follows:

When submitting and paying royalties on Form ONRR CMP-2014, you may not take 100 percent of "bundled" gas transportation and processing fees as an allowance if that fee includes non-allowable costs to place gas into marketable condition. You must show that any costs that you deduct were incurred only to transport and process gas and were not necessary to place your gas in marketable condition.

AR_0169 (citing *Burlington Res. Oil & Gas Co. v. U.S. Dep't of Interior*, No. 13-CV-0678-CVE-TLW, 2014 U.S. Dist. LEXIS 100900, *20 (N.D. Okla. July 24, 2014)). The Order stated the following corrective action:

When you pay a bundled rate under an arm's-length contract for transportation and processing costs, you must unbundle the transportation system and processing plant costs to separate allowable transportation and processing costs from non-allowable costs of placing gas in marketable condition. You may then deduct the allowable transportation and processing costs, but not the non-allowable costs of placing gas in marketable condition.

You must document the method and sources of information that you use to unbundle and submit your unbundling methodology and supporting documentation to the Unbundling Mailbox at onrrunbundling@onrr.gov. You must pay and submit amended Form(s) ONRR CMP-2014 based on your unbundling methodology for all sales months where you took 100 percent of the bundled gas transportation and processing fee as an allowance. In addition, you must pay and submit amended Form(s) ONRR CMP-2014

for all gas producing properties in the San Juan Basin, New Mexico where
you took 100 percent of the bundled gas transportation and processing fees
as an allowance.  The unbundled transportation and processing fee that you
claim may be subject to our review and audit.

AR_0169.

Alternatively, if Plaintiffs did not unbundle the transportation and processing costs,

the Order required Plaintiffs to choose between two other methods of calculating royalties:

1) by using published "unbundling cost allocations" ("UCA") that ONRR developed for

separating deductible and non-deductible services provided by third parties; or 2) by taking

no transportation and processing allowances.  *See* AR_0169-70.  Both alternatives required

Plaintiffs to take corrective action by paying additional royalties and submitting amended

forms "for all gas producing properties in the San Juan Basin, New Mexico and all sales

months where [Plaintiffs] took 100% of the gas transportation and processing fees" as an

allowance.[7]  *Id*.  The Order resulted from Plaintiffs' decision to reject all alternatives and,

instead, "to appeal any order to pay additional royalties based on the unbundling of third

party expenses charged to [them]."  AR_0168.

From Plaintiffs' perspective, the problem of a service provider charging a bundled

rate is not new.  Some royalties examined in the State's audit were paid for gas produced

from the same formations, or processed through the same gathering or treatment systems,

involved in a prior audit of production from 1990 through 1993.  Issues raised during the

---

[7]  If Plaintiffs selected the UCA method, ONRR provided guidance on particular rates to
use:  a published or updated UCA for specific years; and "the most recent UCA as an estimate for
future reporting months."  *Id*.  ONRR provided notice that, even if Plaintiffs used the UCA, ONRR
"may audit your claimed transportation and processing, including your use of a UCA, and may
require you to report and pay based on your actual and reasonable costs."  AR_0170.

prior audit were resolved by a settlement agreement with the Department in May 1998. *See* Settlement Agreement & Mut. Release, AR_0258-66.   The agreement included a methodology for calculating deductible portions of bundled rates for transportation and processing services.   In response to federal guidance regarding coalbed methane gas reporting in 2005, Plaintiffs informed the Department that "Devon intends to continue to report and pay royalties on its coalbed methane production from [the San Juan Basin] in accordance with the terms of the Settlement Agreement."   AR_8675.   Plaintiffs informed the State in response to the audit letters that they believed "the unbundling methodology established by the Settlement Agreement" was binding.   AR_0253.   The Order did not address the settlement agreement.

Plaintiffs also took the position during the audit and the administrative process that they had no duty to unbundle service costs because they lacked the necessary information. Plaintiffs informed the State and ONRR that their service providers would not disclose "a breakdown of these bundled rates that would allow [Plaintiffs] to . . . separate each into deductible and non-deductible transportation and treatment charges, for royalty purposes." *See* AR_0252, AR_0254, AR_0255-56.   Plaintiffs declined to use the UCA method because they "did not have sufficient information to validate ONRR's system [of] plant allocations or its allowed vs. disallowed percentages" and ONRR had not responded to their request for such information.  *See* AR_0253, *See* AR_0254-56.   Plaintiffs asserted that ONRR was required to provide "the background data used to calculate such percentages."  *See* AR_0254, AR_0255, AR_0256.

### Discussion

Plaintiffs acknowledge their responsibility as lessees "for the accurate calculation and payment of royalties" from gas production on federal lands. *See* Reply Br. at 2 (quoting *BP Am. Prod. Co. v. Burton*, 549 U.S. 84, 88 (2006)). They concede the Department's responsibility to audit Plaintiffs' payments and determine that royalties were correctly paid. *Id*. But Plaintiffs challenge the Department's position that lessees must substantiate their deductions for transportation and processing allowances if called to do so.

ONRR's "regulations setting out how to measure the value of production for royalty purposes" recently withstood an industry challenge. *See Am. Petroleum Inst. v. U.S. Dep't of Interior*, 81 F.4th 1048, 1056 (10th Cir. 2023) (hereafter cited as "*API*"). The Tenth Circuit considered the rule in this case: "gross-proceeds valuation, the standard method for calculating royalties when lessees sell oil and gas in arm's-length transactions." *Id*. at 1059 (footnote omitted). "This method values production based on the total payment a lessee receives for a sale, minus specified deductions – called allowances – for expenses the lessee incurs." *Id*. More precisely, ONRR regulations identify deductible and nondeductible allowances that "reflect the general principle that lessees must bear the expense required to put oil and gas in a marketable condition acceptable to buyers." *Id*.[8] For example, the regulations permit

---

[8] The marketable condition rule is stated in royalty regulations as follows:

The lessee must place gas in marketable condition and market the gas for the mutual benefit of the lessee and the lessor at no cost to the Federal Government. Where the value established under [§ 1206.152] is determined by a lessee's gross proceeds, that value will be increased to the extent that the gross proceeds have been reduced

lessees to claim an allowance for (and thus not pay royalty on) certain costs incurred to transport oil and gas and to process gas. But lessees cannot claim an allowance for (and thus must pay royalty on) expenses related to gathering, which generally refers to the movement of production from the well to a central collection point where production from several wells is accumulated for further movement.

*Id.* (citations omitted).

Unlike the challenge in *API* to royalty regulations that classify and limit deductible allowances, Plaintiffs challenge an informal agency decision to deny all transportation and processing allowances claimed in their royalty reports. ONRR determined that Plaintiffs had impermissibly calculated allowances using a bundled rate charged by third parties for multiple services involved in transporting and processing gas (some of which are the responsibility of the lessee to place the gas in marketable condition) and directed Plaintiffs to unbundle the costs and document deductible allowances. When Plaintiffs did not comply, ONRR determined that Plaintiffs had overstated transportation and processing allowances and underpaid royalties by using bundled fee rates, and that Plaintiffs' method of royalty reporting affected all sales periods under review and all leases within the San Juan Basin, New Mexico where a bundled rate was charged. As previously stated, Plaintiffs challenge the Order on multiple fronts.

---

because the purchaser, or any other person, is providing certain services the cost of which ordinarily is the responsibility of the lessee to place the gas in marketable condition or to market the gas.

30 C.F.R. § 206.152(i). "'Marketable condition' means lease products which are sufficiently free from impurities and otherwise in a condition that they will be accepted by a purchaser under a sales contract typical for the field or area for Federal oil and gas." 30 C.F.R. § 206.151.

A.      **Procedural Error Under 30 U.S.C. § 1724(d)(4)(B)**

Plaintiffs first claim that ONRR failed to comply with the statute authorizing a restructured accounting order, 30 U.S.C. § 1724(d)(4)(B)(i), because the Order does not identify a repeated or systemic reporting error and, in fact, does not find Plaintiffs "had committed any reporting error in deducting from the federal royalty share any costs needed to place [their] production in marketable condition."   *See* Am. Opening Br. at 23.[9] Plaintiffs assert that, to satisfy the statutory requirements, the Department must determine a lessee "has made identified underpayments" and must show reporting errors "for a significant number of leases or a single lease for a significant number of reporting months with the same type of error which constitutes a pattern of violations . . . ."   *Id.* at 20 (quoting § 1724(d)(4)(B)(i)).  Plaintiffs contend ONRR did not identify any specific violation of the marketable condition rule or any improper charge.

On this point of attack, the Court is not persuaded by Plaintiffs' arguments.[10] During the auditing process and in the Order itself, Plaintiffs were informed of the reporting

_____

[9]  Section 1724(d)(4)(B)(i) provides:

> The Secretary . . . may issue an order to perform a restructured accounting to a lessee or its designee when the Secretary . . . determines during an audit of a lessee or its designee that the lessee or its designee should recalculate royalty due on an obligation based upon the Secretary's . . . finding that the lessee or its designee has made identified underpayments or overpayments which are demonstrated by the Secretary . . . to be based upon repeated, systemic reporting errors for a significant number of leases or a single lease for a significant number of reporting months with the same type of error which constitutes a pattern of violations and which are likely to result in either significant underpayments or overpayments.

[10]  Neither side cites any caselaw interpreting the statutory provision at issue, and the Court is aware of none.  The Court is therefore guided by the plain language of the statute.

and underpayment violation that ONRR had identified and the reasons for ordering Plaintiffs to recalculate the royalties due.  ONRR stated its position on the bundled-rate issue and identified a systemic reporting error to be corrected.  The ONRR's reasons did not depend on quality specifications for marketable gas, as argued by Plaintiffs, but on regulations that state categorical rules regarding deductible allowances.  *See* AR_0166-67. The Order stated ONRR's findings that using a bundled rate to calculate transportation and processing allowances, without excluding fees for nondeductible services, caused Plaintiffs to overstate deductible expenses and underpay royalties for all gas production within a particular field or area over an extended period of time.  This reporting error was "repeated" and "systemic" under the common meaning of those terms.[11]

Therefore, the Court rejects Plaintiffs' claim that the Department failed to satisfy the statutory prerequisites for issuance of a restructured accounting order.

### B.     Legal Error Regarding the Settlement Agreement

Plaintiffs claim the Department's "disregard of the Settlement Agreement is contrary to law" because a regulation, 30 C.F.R. § 206.150(b), establishes a hierarchy of authority and settlement agreements that provide valuation methodologies "outrank" generally applicable regulations.  *See* Am. Opening Br. at 24.[12]  Plaintiffs contend the

---

[11]  By definition, "repeated" means "done again or many times," and "systemic" means "relating to a system as a whole; inherent in the system."  *See* Oxford English Dictionary (2d ed. 1989).

[12]  Section 206.150(b) provides:  "If the specific provisions of any statute or settlement agreement between the United States and a lessee resulting from administrative or judicial litigation . . . are inconsistent with any regulation in this subpart, then the . . . statute or settlement agreement shall govern to the extent of that inconsistency."

Order is flawed for failing to address their 1998 settlement agreement with the Department and not accepting Plaintiffs' use of a methodology to which the parties had agreed.

Plaintiffs again fail to persuade the Court. Under Plaintiffs' view, to satisfy the APA's requirements to provide a reasoned decision and to address all aspects of the problem, ONRR was required to explain why the 1998 settlement agreement did not apply or why Plaintiffs could not continue using a reporting method described in the agreement (as they argued). *See* Am. Opening Br. at 24-25. The legal authorities on which Plaintiffs rely do not support the proposition that an agency's silence regarding a party's argument violates the APA.

As argued by Plaintiffs, an agency must respond to comments that challenge "a fundamental premise" of the agency's action and must consider "important aspect[s]" of the problem. *Id.* at 25 (quoting *Carlson v. Postal Regul. Comm'n*, 938 F.3d 337, 344 (D.C. Cir. 2019), and *Market Synergy Grp., Inc. v. U.S. Dep't of Labor*, 885 F.3d 676, 683 (10th Cir. 2018)). "An agency need not discuss every item of fact or opinion included in the submissions made to it" but must instead make a sufficient response to permit judicial review. *Carlson*, 938 F.3d at 344 (internal quotation omitted). Under the arbitrary and capricious standard, federal courts cannot "disturb an agency's final decision when the agency's decisionmaking process may reasonably be discerned, even if it rested on a less-than-ideal explanation." *State ex rel. Kobach v. U.S. Dep't of Interior*, 72 F.4th 1107, 1125-26 (10th Cir. 2023) (internal quotation omitted).[13]

_____

[13] However, "courts may not accept appellate counsel's *post hoc* rationalizations for agency action. It is well-established that an agency's action must be upheld, if at all, on the basis

Plaintiffs made arguments during the State's audit and the administrative process regarding the 1998 settlement agreement that did not challenge a fundamental premise of ONRR's decision or resolve an important aspect of the bundled-rate problem.  Plaintiffs did not contend that the settlement agreement pertained to all production under the three unitization agreements or that a methodology established by the settlement agreement encompassed all transportation and processing allowances at issue.  *See* AR_0250-56.  As to some gas production, Plaintiffs expressly stated that, although they lacked necessary information to determine if nondeductible services were included, they "deducted the entire bundled rate charged . . . [for transportation of] conventional gas, for royalty accounting purposes."  *See* AR_0254.  A careful reading of Plaintiffs' briefs in this action also shows that the settlement agreement would not resolve the unbundling problem identified in the Order.[14]  In short, Plaintiffs' settlement-agreement arguments did not impact ONRR's position that Plaintiffs must unbundle the rates charged by their service providers.

Therefore, the Court rejects Plaintiffs' claim that the Department erred by failing to consider the 1998 settlement agreement as a defense to ONRR's unbundling requirement.

---

articulated by the agency itself."  *Motor Vehicle Mfrs.*, 463 U.S. at 50 (citation omitted).  Thus, the Court declines to consider the Department's argument that the rates set by the 1998 settlement agreement "expired in 2000, well before the Audit Period in 2004."  *See* Resp. Br. at 24.

[14]  For example, Plaintiffs say the settlement agreement set deductible rates for an earlier provider of transportation and treatment services for coalbed gas (Burlington Resources Gathering, Inc.), but "[t]he listed transportation rates expired."  *See* Am. Opening Br. at 8.  Plaintiffs make a conclusory argument that, after "the Burlington contracts were replaced, [Plaintiffs] became obliged to use actual transportation rates under new agreements" with other service providers.  *Id.* at 27.  Plaintiffs provide no explanation or support for this contention.

### C.      Legal Errors Regarding the Burden of Proof

Plaintiffs mount a merits-based challenge to the Order that identifies three errors, all related to the burden of proof:[15]  1) in requiring Plaintiffs to unbundle allowances or lose all deductions, the Department improperly placed the burden on them as lessees to prove deductible allowances (Am. Opening Br. at 32-34); 2) in allowing ONRR's decision to stand, the Department improperly and without legal authority shifted to Plaintiffs a requirement to prove allowances in the first instance (*id*. at 34-37); and 3) in disallowing all deductions, the Department deprived Plaintiffs of allowances that are mandated by royalty regulations in violation of due process.  *Id*. at 37-39.[16]  This understanding of Plaintiffs' challenge is reinforced by their reply brief, in which they argue that the Department articulates for the first time in its brief a "Rule of Decision" regarding the lessee's burden for bundled fee contracts that lacks statutory authority, was not reached through rulemaking, and is not entitled to judicial deference.  *See* Reply Br. at 4-10.  At

---

[15]  Plaintiffs introduce the merits section of their brief with the proposition that the Order improperly shifts to lessees the burden to prove compliance with the marketable condition rule. *See* Am. Opening Br. at 30-31.

[16]  Plaintiffs' argument regarding an alleged violation of the Due Process Clause begs the question of whether ONRR's requirement to substantiate a deductible allowance implicates a constitutionally protected property interest.  Plaintiffs make a conclusory argument that a lessee's right to deductions "is beyond debate" because the language of regulations that allow lessees to claim certain deductions "is mandatory – ONRR 'shall' allow a deduction."  *See id*. at 38 (quoting 30 C.F.R. § 206.15).  Plaintiffs cite as legal authority, *Amoco Production Co. v. Fry*, 118 F.3d 812, (D.C. Cir. 1997), which held that lessees were deprived of a property interest when the Department withheld refunds of royalty overpayments to which the lessees were entitled by statute after certain prerequisites were met.  In contrast here, if ONRR's position is correct, a lessee's "entitlement" to an allowance depends on the lessee's proper documentation of an allowable service cost.

bottom, Plaintiffs contend the Department's position misplaces the burden of proof and is unsupported by legal authority. *Id.* at 14-17.

The parties' disagreement regarding ONRR's requirement for lessees to unbundle service costs raises a pivotal question: Does the lessee bear the burden to demonstrate, if called to do so, that the reported transportation and processing allowances include only deductible expenses, or does ONRR bear an initial burden to show the lessee's allowances include nondeductible expenses? The Department advocates the view that an allowance is a benefit that Plaintiffs must properly substantiate if they elect to claim it. *See* Resp. Br. at 18 ("an allowance is a supplemental benefit a lessee can, but is not required to take"). Plaintiffs' arguments reflect their view of an authorized allowance under the regulations as a right or entitlement that the lessee may deduct without prior agency approval. Plaintiffs assert that ONRR must show an error in a claimed allowance before they can be called to justify it and neither the State nor ONRR made such a finding. Plaintiffs contend no regulation imposes an unbundling requirement and the Department lacks legal authority for such a requirement. Plaintiffs also contend the alternative UCA method is inconsistent with the rule that an allowance must be based on reasonable, actual costs.[17]

Upon careful consideration, the Court is not persuaded by Plaintiffs' argument that the Department unlawfully, and thus arbitrarily and capriciously, placed the burden to unbundle service costs on them as lessees. Neither side presents case law that squarely

---

[17] *See, e.g.*, 30 C.F.R. § 206.156 (stating general rule for transportation allowances that ONRR "shall allow a deduction for the reasonable actual costs incurred by the lessee to transport unprocessed gas, residue gas, and gas plant products from a lease to a point off the lease").

decides the issue of where the unbundling burden lies.  However, the regulatory framework regarding royalty payments favors the Department's position.

The Court agrees with Plaintiffs that the Department stretches its cited authority – an unpublished district court decision in *Burlington Resources Oil and Gas Co. v. Dep't of Interior*, No. 13-cv-0678-CVE-TWL, 2014 WL 3721210 (N.D. Okla. July 24, 2014) – beyond the issues decided in that case.[18]  *Burlington* involved the proper valuation method for sales of unprocessed gas under percentage-of-proceeds contracts.  Because the purchaser provided processing services, the royalty payment question was whether the lessee could use contract proceeds as a proper measure of value for marketable gas.  The court determined that the lessee bore "the burden of establishing that its gas was marketable prior to processing" in order to value the gas for royalty purposes using actual proceeds.  *Id*. at 6.  The court deferred to the agency's "strict interpretation" of the marketable condition rule "as requiring a lessee to bear the costs of processes that make gas marketable, even if those processes serve additional functions;" this interpretation "simply ensures that the government will not bear the cost of placing gas in marketable condition."  *Id*. at *7.  However, unlike this case, the agency in *Burlington* identified processing services that

---

[18]  During the rulemaking process for the current royalty regulations, ONNR also relied on this authority to support its position regarding an index-based valuation method.  *See* Consolidated Federal Oil & Gas and Federal & Indian Coal Valuation Reform, 81 Fed. Reg. 43,338, at 43,347 (July 1, 2016) ("Lessees have the burden of showing that none of the costs that they incur and deduct are costs to place their gas production in marketable condition.  *Burlington Res. Oil & Gas Co. LP v. U.S. Dep't of the Interior*, No. 13-CV-0678-CVE-TLW, 2014 WL 3721210, at *12 (N.D. Okla. July 24, 2014).").  There, too, *Burlington* was cited out of context to support the agency's "strict interpretation" of the marketable condition rule, discussed *infra*.

were necessary to place the gas in marketable condition and found that the lessee was responsible for those costs. *Id*. at *2, *6.

Both parties find some support for their positions in *Devon Energy Production Co. v. Gould*, 421 F. Supp. 3d 1213 (D. Wyo. 2019), which was an APA action by one of the plaintiffs in this case to review a similar ONRR order finding an underpayment of royalties on natural gas production in Wyoming due, in part, to improperly calculated transportation allowances. Although the bundled rate issue arose in a different context, the reviewing court articulated "the overarching issue" in the case to be "whether the Director acted arbitrarily and capriciously by requiring Devon to unbundle the Williams Fee." *Id*. at 1228. After considering caselaw and prior agency decisions, the district court determined that "[w]hether during the audit or after the ONRR Director pointed out the marketable condition snag, . . . the burden eventually fell on Devon to substantiate its transportation deductions." Id. at 1230. Specifically, the court ruled that "Devon [would] need to unbundle the Williams Fee before the agency to satisfy its burden and receive the deduction." *Id*. as 1238.

The Department relies on this ruling to support its position in this case that the unbundling burden fell on Plaintiffs. *See* Resp. Br. at 13-14. The Department also relies on the court's holding in *Gould* "that the [transportation allowance] regulations are unambiguous and the burden was on Devon to demonstrate why its transportation deductions were proper during the audit." *See id*. at 20-21 (quoting *Gould*, 421 F. Supp. 3d at 1233).

Plaintiffs contend the court's statement in *Gould* regarding the lessee's burden to unbundle costs was "dictum." *See* Reply Br. at 17.  The district court determined that a remand to the agency was necessary to resolve factual questions "on the unbundling or marketable condition issues" under the circumstances, namely, where "the state auditors [had] agreed that some of the Williams Fee was properly deductible and Devon [had] presented evidence on the issue." *See Gould*, 421 F. Supp. 3d at 1230.  The court reasoned that "Devon submitted evidence to the IBLA [during an administrative appeal] regarding its marketable condition analysis" and thus "[f]urther fact finding is necessary to determine when, or if, Devon's gas reached marketable condition." *Id*. at 1231-32.  Plaintiffs argue that here, too, the necessary fact finding by the Department is missing, even though they provided information to the auditors "to show no further unbundling was needed." *See* Reply Br. at 16.  The Department disagrees with Plaintiffs on this point, arguing that *Gould* is distinguishable on the issue of further factual development because Plaintiffs offered no evidence during the auditing or administrative process that would permit a marketable condition analysis.  *See* Resp. Br. at 19 n.8.

After careful consideration of strong arguments by both parties, the Court is not persuaded that Plaintiffs have fulfilled their obligation under the APA to demonstrate error in the Department's decision.  Plaintiffs have carefully crafted an argument that is facially persuasive but does not withstand scrutiny.  Plaintiffs assert that the audit letters and the Order lack specific findings of a violation of the marketable condition rule so their duty to provide information to satisfy the rule was never triggered.  The Court finds, however, that the State and ONRR both informed Plaintiffs of the alleged violation created by their

payment of bundled rates for transportation and processing services and their calculation of deductible allowances based on those rates.

Throughout the audit, the State plainly identified a violation of the marketable condition rule and the issue presented by bundled costs.  *See*, *e.g.*, AR_0237-42.[19]  The State proposed to correct the violation by using the UCA method of calculating allowances. Plaintiffs clearly understood the alleged violation and the issue because they countered by stating they could not unbundle and by advocating a method allegedly set by the settlement agreement.  Both the State and ONRR by their silence implicitly rejected Plaintiffs' proposed method, and expressly placed Plaintiffs on notice that they must substantiate an unbundling of the actual rates.  Plaintiffs provide no citation to the record that shows they provided information during the audit to satisfy the unbundling requirement (other than the settlement-agreement method) or to require further analysis by the State or the Department. Instead, Plaintiffs implicitly argue that they did not provide this cost information because it was controlled by third parties and ONRR was the one with access to it (presumably obtained in formulating the UCA).  *See* Reply Br. at 16-17 ("Devon provided the auditors with the information *in its control* to show no further unbundling was needed" and the Department "already has the unbundling cost information from third parties. . . and will not provide it to Devon") (emphasis added).  In short, Plaintiffs' argument that the duty to unbundle was never triggered, or was met, does not hold up.

---

[19]  In a revised audit letter in September 2014, the State quoted the regulation and stated the issue:  "Devon receives services to transport and treat natural gas that include functions required to place the gas into marketable condition.  No attempts to separate (unbundle) the allowable services from disallowable services . . . have been presented."  AR_0238.

Plaintiffs alternatively assert that ONRR cannot impose an unbundling requirement because it is not authorized by any regulation.  To Plaintiffs, "[i]t is significant that the Order does not cite a regulation" and, in fact, "there is no such regulation."  *See* Am. Opening Br. at 36.  This argument proves too much.  The marketable condition rule requires lessees to bear the cost of a service "which ordinarily is the responsibility of the lessee to place the gas in marketable condition," and allowances must be based on "the reasonable actual costs incurred by the lessee."  *See*, *e.g.*, 30 C.F.R. §§ 206.152(i), 206.156.  The Order takes both these regulations into account and interprets them to impose an unbundling requirement.  The fact that there is no unbundling regulation means the requirement is not inconsistent with any regulation.  Plaintiffs identify no inconsistency.  In short, Plaintiffs have not shown that the requirement exceeds the Department's authority to determine how federal royalty regulations apply to a particular situation, here, bundled service costs.

The Court also is not persuaded by Plaintiffs' resort to fairness arguments – that it is unfair for ONRR to impose an unbundling requirement that a lessee cannot meet without access to necessary information and, as the alternative, to compel the lessee to accept the UCA or lose an allowance altogether.  Plaintiffs provide no authority for the proposition that such concerns may override a properly issued order.[20]

---

[20]  Although not applicable here, the Court notes that the Department's approach to bundled rates is consistent with its stated regulatory concerns of "ensuring a fair return to the public . . . [and] limiting ONRR's administrative costs."  *See API*, 81 F.4th at 1067.

### Conclusion

For these reasons, the Court finds that the Department's decision should be affirmed.

**IT IS THEREFORE ORDERED** that a separate judgment shall be entered in favor Defendant United States Department of the Interior.

**IT IS SO ORDERED** this 9th day of May, 2024.

_____
TIMOTHY D. DeGIUSTI
Chief United States District Judge